UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NEIL T. DURRANT,<br><br>  Plaintiff,<br><br>  v.<br><br>UNIGARD INSURANCE COMPANY,<br><br>  Defendant. | Case No. 1:12-cv-00115-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court are the parties' cross-motions for summary judgment (Dkts. 11 & 15). The Court heard oral argument on October 9, 2012, and took the matter under advisement. For the reasons set forth below the Court will deny Defendant Unigard Insurance Company's Motion for Summary Judgment (Dkt. 11), and grant Plaintiff Neil T. Durrant's Cross-Motion for Partial Summary Judgment (Dkt. 16).

## BACKGROUND

Plaintiff Neil T. Durrant seeks underinsured motorist (UIM) coverage based on an insurance policy with the defendant, Unigard Insurance Company. Durrant, while driving a tractor owned by Big D Ranch, was struck by a drunk driver. Durrant filed suit against the negligent driver, and he recovered the $100,000 limit on the driver's automobile insurance policy. Because this amount did not cover the full measure of

MEMORANDUM DECISION AND ORDER - 1

Durrant's damages, Durrant filed an underinsured motorist claim with Unigard, his insurer, for the remaining, unpaid compensatory damages.  Unigard denied the claim.  It contends that Durrant's UIM coverage does not apply to the accident.

Durrant contends that Unigard wrongfully denied him UIM coverage, and he therefore filed this lawsuit.  Now both parties seek summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any material fact-a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152,

1159 (9th Cir.1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir.1988).

When cross-motions for summary judgment are filed, the Court must independently search the record for factual disputes. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment – where both parties essentially assert that there are no material factual disputes-does not vitiate the court's responsibility to determine whether disputes as to material fact are present. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256–57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

## ANALYSIS

The Idaho Supreme Court has made clear that the question of whether an insurance policy is ambiguous is a question of law for the court to determine. *Farm Bureau Mutual Insurance Co. Of Idaho v. Schrock*, 252 P.3d 98, 102 (Idaho 2011) (citing *Cherry v. Coregis Insurance Co.*, 204 P.3d 522, 524 (Idaho 2009)).  A court must ask whether a policy is reasonably subject to conflicting interpretations in order to determine whether it is ambiguous. *Id.* If the language of the policy is clear and unambiguous, then it will be given its ordinary and plain meaning. *Id.*

Insurance contracts, however, are "subject to certain special canons of construction." *Clark v. Prudential Property And Casualty Ins. Co.*, P.3d 242, 244 (Idaho 2003).  Those special canons of construction include the admonition that "ambiguities must be construed most strongly against the insurer," and "[t]he burden is on the insurer to use clear and precise language if it wishes to restrict the scope of coverage, and exclusions not stated with specificity will not be presumed or inferred." *Id*. at 245.  The Idaho Supreme Court therefore instructs that any apparent ambiguities in the policy terms should be resolved in favor of coverage. *Cherry*, 204 P.3d at 524.

The Unigard policy in dispute was issued to Big D Ranch as part of a comprehensive "Multi-Farm Commercial Package Policy." *Unigard Policy* at 2, Dkt. 12-1.  Durrant is an employee of Big D Ranch and was listed as a "Named Insured" under the policy. The policy package includes a Business Auto coverage portion.  The Business

Auto coverage contains fifteen separate forms and endorsements, including "ID Underinsured Motorist Coverage." *Id.* at 4.

The Underinsured Motorist endorsement provides:

We will pay the sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.' The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the 'underinsured motor vehicle.'

*Unigard Policy* at 38.

The UIM endorsement defines "insured" individuals as: (1) "The Named Insured and any 'family members'"; (2) "Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'"; or (3) "Anyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured.'" *Id.* at 39.

It is undisputed that Durrant meets each of these UIM coverage requirements. First, he is a "Named Insured" under the policy. Second, he is legally entitled to recover compensatory damages from a negligent driver of an "underinsured motor vehicle." Third, Durrant's damage resulted from "bodily injuries" caused by an "accident." Fourth, the negligent driver's liability resulted from the "ownership, maintenance or use" of an "underinsured motor vehicle." And, finally, the UIM coverage was triggered because the negligent driver's liability limits were exhausted. Thus, it is undisputed that Durrant satisfies each of the express condition for coverage under the UIM Endorsement.

Unigard responds that language contained in the "Schedule of Coverages and Covered Autos," as well as the introductory paragraph to the UIM endorsement, restricts

**MEMORANDUM DECISION AND ORDER - 5**

coverage to "covered autos" only. And this language, according to UIM, provides the "lens" through which the language of the Underinsured Motorist Endorsement must be viewed.

The "Schedule of Coverages and Covered Autos" consists of a four column table listing the coverages available, the covered autos, the policy limit for each coverage type, and the premium amount for each coverage type. At the top of this table there is language suggesting that coverage only applies to "covered" autos:

> This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those 'autos' shown as covered "autos."

*Unigard Policy* at 7, Dkt. 12-1. A "charge" is shown in the premium column for the following coverages: Liability, Medical Payments, Uninsured Motorists, UIM, Physical Damage Comprehensive Coverage, and Physical Damage Collision Coverage. So, presumably, these coverages would only apply to "covered autos."

Similarly, the introductory language to the UIM endorsement states "For a covered 'auto' licensed or principally garaged…in Idaho, this endorsement modifies insurance provided under the following: Business Auto Coverage Form…."

These provisions, standing alone, appear to restrict UIM coverage to "covered" autos. But when read in the context of the entire contract, the language in the Schedule and introductory paragraph to the UIM endorsement creates an ambiguity. As noted above, the Business Auto Coverage in this policy includes five different coverage types: Liability, Physical Damage, Uninsured Motorist, UIM, and Medical Payments. Liability

MEMORANDUM DECISION AND ORDER - 6

and Physical damage are part of the main policy, and Uninsured, UIM, and Medical Payments Coverage are added to the policy through endorsements. Each of these coverages defines who is "Insured" and under what circumstances.

Liability Coverage, for example, specifically limits coverage to "covered" autos. It provides that Unigard will pay "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" *Unigard Policy* at 19. In addition, "insured" is separately defined as "[y]ou for any covered 'auto.'" *Id.* at 20. The Physical Damage coverage provision also limits coverage to a "covered" auto: "We will pay for 'loss' to a covered 'auto' or its equipment…." *Id.* at 23.

By contrast, the Auto Medical Payments Coverage provision does not restrict coverage to accidents involving "covered autos" only. It states that Unigard "will pay reasonable expenses incurred for necessary medical and funeral services to or for an 'insured' who sustains 'bodily injury' caused by 'accident.'" It defines "insured" as an individual Named Insured "while 'occupying' or, while a pedestrian, when struck by an 'auto.'" *Id.* at 42. Alternatively, this provision defines "insured" as "Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'" *Id.* Thus, a Named Insured receives Medical Payments coverage under the policy if he is sustains bodily injuries while walking, but anyone else only receives such coverage while occupying a "covered auto." As these two definitions of "insured" demonstrate, when

Unigard intends to limit coverage to persons occupying "covered autos," it states so explicitly.

The broad language contained in the in the UIM provision more closely parallels the Medical Payments language than the narrower Liability or Physical Damages language. As already discussed, UIM provision extends to an "insured" who sustains "bodily injury" caused by an "accident." Unlike the Liability or Physical Damages provisions, nothing in the UIM provision restricts coverage to a "covered auto."

It would have been simple for Unigard to make it clear that UIM coverage only applied to "covered autos." All Unigard had to say in the policy was that UIM coverage applies to a Named Insured only while "occupying" a "covered" auto, or something to that effect. But it did not. Indeed, Unigard included a specific exclusion that restricts coverage for "Bodily injury" sustained by an Individual Named Insured or "family member" while occupying any vehicle owned by that Named Insured or "family member" *that is not a "covered auto." Id.* at 42 (emphasis added). If Unigard intended to restrict UIM coverage in every instance to accidents involving "covered autos," why would it include this exclusion? It would be superfluous.

At worst, Unigard's failure to make clear UIM coverage was restricted to "covered autos" and its insertion of this specific exclusion suggest it never intended to restrict UIM coverage to "covered autos." At best, it creates an ambiguity. Given that Idaho law requires that all ambiguities be construed in favor of coverage, the Court finds that the Unigard policy provides UIM coverage for Durrant in the circumstances of this case.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion for Summary Judgment (Dkt. 11) is DENIED.

2. Plaintiff's Cross- Motion for Partial Summary Judgment (Dkt. 16) is GRANTED.

DATED: October 15, 2012

B. Lynn Winmill  
Chief Judge  
United States District Court